Exhibit 1

MASTER MORTGAGE LOAN PURCHASE AGREEMENT

between

Easy Financial LLC,
as Seller

and

CHURCHILL FUNDING I LLC,
as Purchaser

Dated as of June 11, 2020

# TABLE OF CONTENTS

SECTION 1. Definitions.....................................................................................................1

SECTION 2. Purchase and Conveyance.............................................................................8

SECTION 3. Mortgage Loan Schedule..............................................................................9

SECTION 4. Purchase Price; FUNDING ESCROW; Funding of Draws. ......................9

    Subsection 4.01. Purchase Price. ......................................................................................9

    Subsection 4.02. Funding of Draws...................................................................................9

SECTION 5. Examination of Mortgage Files; Due Diligence. ......................................10

SECTION 6. Delivery of Mortgage Loan Documents. ...................................................11

    Subsection 6.01. Possession of Mortgage Files. ............................................................11

    Subsection 6.02. Books and Records...............................................................................11

    Subsection 6.03. Delivery of Mortgage Loan Documents..............................................11

SECTION 7. Representations, Warranties and Covenants; Remedies for Breach. .......12

    Subsection 7.01. Representations and Warranties Regarding Individual Mortgage Loans.......12

    Subsection 7.02. Seller Representations. .........................................................................25

    Subsection 7.03. Remedies for Breach of Representations, Warranties and Covenants. ..........28

    Subsection 7.04. Interim Servicing; Servicing Transfer.................................................29

    Subsection 7.05. Covenants of Seller. .............................................................................30

    Subsection 7.06. Early Payment Default. ........................................................................31

SECTION 8. Closing. ......................................................................................................32

SECTION 9. Closing Documents. ...................................................................................32

SECTION 10. Costs..........................................................................................................33

SECTION 11. Financing Facility Cooperation................................................................33

SECTION 12. Notices. .....................................................................................................34

SECTION 13. Severability Clause. ..................................................................................34

SECTION 14. No Partnership...........................................................................................35

SECTION 15. Governing Law; Venue; Waiver of Jury Trial. .......................................................35

SECTION 16. Intention of the Parties. ........................................................................................36

SECTION 17. Waivers. ................................................................................................................36

SECTION 18. Exhibits. ................................................................................................................36

SECTION 19. General Interpretive Principles. ...........................................................................36

SECTION 20. Reproduction of Documents. ................................................................................37

SECTION 21. Amendment...........................................................................................................37

SECTION 22. Confidentiality. .....................................................................................................37

SECTION 23. Entire Agreement. .................................................................................................38

SECTION 24. Further Agreements...............................................................................................38

SECTION 25. Successors and Assigns.........................................................................................38

**EXHIBITS**

EXHIBIT 1        FORM OF SELLER'S OFFICER'S CERTIFICATE
EXHIBIT 2        BUSINESS PURPOSE LOANS UNDERWRITING GUIDELINES
EXHIBIT 3        PURCHASE CONFIRMATION
EXHIBIT 4        MORTGAGE LOAN SCHEDULE FIELDS
EXHIBIT 5        MORTGAGE FILE
EXHIBIT 6        MORTGAGE LOAN DOCUMENTS
EXHIBIT 7        BORROWER INFORMATION
EXHIBIT 8        ADDITIONAL DRAW FUNDING REQUIREMENTS

# MASTER MORTGAGE LOAN PURCHASE AGREEMENT

THIS MASTER MORTGAGE LOAN PURCHASE AGREEMENT (as may be amended, supplemented or otherwise modified from time to time, the "**Agreement**"), dated as of June 11, 2020, is by and between CHURCHILL FUNDING I LLC, a Delaware limited liability company, as purchaser (the "**Purchaser**"), and Easy Financial LLC, a Nevada limited liability company, as seller (the "**Seller**").

## PRELIMINARY STATEMENT

WHEREAS, the Seller desires to sell to the Purchaser, from time to time, and the Purchaser desires to purchase from the Seller, from time to time, certain residential first lien mortgage loans, inclusive of the related Servicing Rights (collectively, the "**Mortgage Loans**"), on a servicing-released basis, which Mortgage Loans shall be delivered on the date provided in the related Purchase Confirmation (as defined herein);

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a Mortgaged Property located in the jurisdiction indicated on the related Mortgage Loan Schedule annexed to the related Purchase Confirmation; and

WHEREAS, the Purchaser and the Seller wish to prescribe the manner of the conveyance, interim servicing and control of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

## SECTION 1. **DEFINITIONS**.

For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below.

Additional Draw Amounts:  With respect to any Additional Draw Unfunded Loan, the additional principal amount advanced to the related Mortgagor by the Seller from time to time pursuant to the terms of the related Mortgage Note.

Additional Draw Funding Date:  With respect to any Additional Draw Unfunded Loan, the date on which any Additional Draw Amounts are reimbursed by the Purchaser to the Seller pursuant to Subsection 4.02(b).

Additional Draw Unfunded Loan:  Any Mortgage Loan that provides for Additional Draw Amounts but that provides for interest accruals only on the funded portion thereof.

Additional Draw Report:  As defined in Subsection 4.02(a) hereof.

Administrative Fee:  With respect to each Mortgage Loan, the amount of the annual administrative fee the Purchaser shall pay to the Seller in consideration of the performance by the Seller of any duties to be performed by the Seller, as mutually agreed upon by the Seller and

Purchaser, which shall, for each month, be equal to one-twelfth of the product of (i) the Administrative Fee Percentage and (ii) the unpaid principal balance of the Mortgage Loan (the "Monthly Administrative Fee").  The Monthly Administrative Fee shall be reduced by any servicing-related expenses incurred by Purchaser.  Such fee shall be payable monthly, computed on the basis of the same principal amount and period respectively which any related interest payment on a Mortgage Loan is computed.  In the case of any partial month, the Administrative Fee for such month shall be pro-rated at a per diem rate based upon a thirty (30) day month. Notwithstanding anything to the contrary herein, and for the avoidance of doubt, the Seller shall only be entitled to receive the Administrative Fee on Mortgage Loans in each month in which a payment has been received from the specific Mortgagor and so long as the related Mortgage Loan is not in default under the terms of said Mortgage Loan. Upon default of a Mortgage Loan sold by the Seller to the Purchaser, the right to receive the Administrative Fee shall terminate during the default period.

Administrative Fee Percentage:  With respect to each Mortgage Loan, the percentage noted as such on the related Purchase Confirmation.

Agreement:  This Master Mortgage Loan Purchase Agreement including all exhibits, schedules, amendments and supplements hereto.

ALTA:  The American Land Title Association or any successor in interest thereto.

Applicable Law:  All applicable (a) federal, state, and local legal requirements (including statutes, rules, regulations, and ordinances), including but not limited to usury, truth-in-lending, real estate settlement, consumer credit, equal credit opportunity, fair housing, disclosure, anti-predatory or abusive lending, or unfair and deceptive acts and practices laws, (b) requirements and guidelines of each governmental authority having jurisdiction, and (c) judicial and administrative judgments, orders, stipulations, awards, writs, and injunctions, as such may be amended, modified or supplemented from time to time.

Appraisal:  With respect to any Mortgaged Property, an appraisal of the as-is and/or as-repaired value of such Mortgaged Property that was made, signed, and prepared by a Qualified Appraiser.

Appraised Value:  With respect to any Mortgaged Property, the value thereof as indicated on the Appraisal.

Assignment of Mortgage:  With respect to each Mortgage Loan, an assignment of the Mortgage, notice of transfer or equivalent instrument in recordable form, sufficient under the laws of the jurisdiction wherein the related Mortgaged Property is located to reflect the transfer of the Mortgage to the party indicated therein.

Borrower Information: With respect to each Mortgagor, the information set forth on Exhibit 7.

Business Day:  Any day other than (a) a Saturday or Sunday, or (b) a day on which banking and savings and loan institutions in the state of North Carolina or New York are authorized or obligated by law or executive order to be closed.

Closing Date:  With respect to any Mortgage Loan, the closing date set forth in the related Purchase Confirmation.

Closing Documents:  The documents required to be delivered on the related Closing Date pursuant to Section 9.

Code:  The Internal Revenue Code of 1986, as amended, modified, or supplemented from time to time, and any successor statute, and all rules and regulations issued or promulgated in connection therewith.

Commission:  The United States Securities and Exchange Commission or any governmental authority succeeding to any or all of the functions of such Commission.

Condemnation Proceeds:  All awards, compensation and settlements in respect of a taking (whether permanent or temporary) of all or part of a Mortgaged Property by exercise of the power of condemnation or the right of eminent domain, to the extent not required to be released to a Mortgagor in accordance with the terms of the related Mortgage Loan Documents.

Consumer Information:  Any personally identifiable information in any form (written electronic or otherwise) relating to a Mortgagor or guarantor thereof, including, but not limited to: a Mortgagor's (or guarantor's) name, address, telephone number, Mortgage Loan number, Mortgage Loan payment history, delinquency status, insurance carrier or payment information, tax amount or payment information; the fact that the Mortgagor (or guarantor thereof) has a relationship with the Seller, the Purchaser or the originator of the related Mortgage Loan; and any other non-public personally identifiable information.

Credit Score:  With respect to any Mortgage Loan, the credit score of the related primary Mortgagor or guarantor thereof provided by an organization acceptable to the Purchaser at the time of origination of such Mortgage Loan.  If two (2) credit bureau scores are obtained, the Credit Score will be the lower score.  If three (3) credit bureau scores are obtained, the Credit Score will be the middle of the three (3).  There is only one (1) score for each Mortgagor and for each guarantor thereof.

Custodial Agreement:  With respect to any Mortgage Loan, the agreement governing the retention by a Custodian of the documents contained in the related Mortgage Loan Documents.

Custodian:  With respect to any Custodial Agreement, the custodian under such Custodial Agreement or its successor in interest or assigns, or any successor to the Custodian under such Custodial Agreement, as therein provided.

Cut-off Date:  With respect to each Mortgage Loan, the first day of the month of the related Closing Date unless otherwise set forth in the related Purchase Confirmation.

Cut-off Date Principal Balance:  With respect to each Mortgage Loan, the Unpaid Principal Balance of such Mortgage Loan as of the related Cut-off Date.

Deposit:  As defined in Subsection 4.02(a) hereof.

Diligence Provider:  One or more third parties appointed by the Purchaser to conduct due diligence with respect to the Mortgage Loans.

Due Date:  With respect to each Mortgage Loan, the day of the calendar month on which the Monthly Payment is due on such Mortgage Loan, exclusive of any days of grace.

FIRREA:  The Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as amended and in effect from time to time.

Fitch:  Fitch Ratings Inc. or any successor in interest.

Initial Principal Balance:  With respect to each Mortgage Loan, the principal balance advanced to or on behalf of the Mortgagor (including, with respect to a Rehab/Construction Holdback Mortgage Loan, any Rehab/Construction Holdback Mortgage Amounts).

Insurance Proceeds:  With respect to each Mortgage Loan, proceeds of insurance policies that insure the Mortgage Loan, the related Mortgaged Property or the REO Property, as applicable, including the proceeds of any hazard or flood insurance policy or title insurance policy.

Interim Servicing Period: The period from the related Closing Date to the related Servicing Transfer Date.

Liquidation Proceeds:  Amounts, other than Insurance Proceeds or Condemnation Proceeds, received in connection with the liquidation of a Mortgage Loan or REO Property, whether through the sale or assignment of such Mortgage Loan, trustee's sale, foreclosure sale or otherwise, or the sale of the related REO Property, if the Mortgaged Property is acquired in satisfaction of a Mortgage Loan.

Loan Stipulations:  As defined in each Purchase Confirmation.

Maximum Loan Balance:  With respect to any Mortgage Loan other than an Additional Draw Unfunded Loan, the Initial Principal Balance.  With respect to any Additional Draw Unfunded Loan, the maximum principal balance of a Mortgage Loan as stated in the related Mortgage Loan Documents, which includes both funded and unfunded amounts.

Monthly Payment:  With respect to each Mortgage Loan, the scheduled payment of interest payable by a Mortgagor under the related Mortgage Note on each Due Date.

Moody's:  Moody's Investors Service, Inc. or any successor in interest.

Mortgage:  The mortgage, deed of trust or other instrument securing a Mortgage Note, which creates a first lien on an unsubordinated estate in fee simple in real property securing the Mortgage Note.

Mortgage File:  With respect to each Mortgage Loan, the items shown on Exhibit 5 hereto to be delivered to the Custodian.

<u>Mortgage Interest Rate</u>:  With respect to each Mortgage Loan, the annual rate of interest provided for in the related Mortgage Note and set forth in the related Mortgage Loan Schedule.

<u>Mortgage Loan</u>:  Each first lien, residential mortgage loan that is purchased pursuant to this Agreement and identified on the related Mortgage Loan Schedule, which mortgage loan includes, without limitation, the Mortgage Loan Documents, the Monthly Payments, Escrow Payments, Principal Prepayments, Liquidation Proceeds, Condemnation Proceeds, Servicing Rights, Insurance Proceeds, REO Disposition Proceeds, and all other rights, benefits, proceeds, and obligations arising from or in connection with such Mortgage Loan.

<u>Mortgage Loan Documents</u>:  The items pertaining to a particular Mortgage Loan and referred to as Mortgage Loan Documents, as set forth on <u>Exhibit 6</u> hereto.

<u>Mortgage Loan Pool</u>:  The Mortgage Loan or Mortgage Loans sold to the Purchaser by the Seller on a Closing Date.

<u>Mortgage Loan Schedule</u>:  For each Closing Date, the schedule of Mortgage Loans to be delivered by the Seller to the Purchaser setting forth the information described in <u>Exhibit 4</u> hereto with respect to each of the related Mortgage Loans, and attached to the related Purchase Confirmation.

<u>Mortgage Note</u>:  The note or other evidence of the indebtedness of a Mortgagor secured by a Mortgage.

<u>Mortgaged Property</u>:  The Mortgagor's real property securing repayment of a related Mortgage Note, consisting of a fee simple interest in a single parcel of real property improved by a Residential Dwelling.

<u>Mortgagee</u>:  The mortgagee or beneficiary named in the Mortgage and the successors and assigns of such mortgagee or beneficiary.

<u>Mortgagor</u>:  With respect to each Mortgage Loan, the obligor on a Mortgage Note, including any co-borrower, co-maker, co-signor or guarantor, who is obligated under the terms of such Mortgage Note.

<u>Officer's Certificate</u>:  A certificate signed by a person whom is authorized to execute such Certificate on behalf of the related entity.

<u>Payment Date</u>:  As defined in the Servicing Agreement.

<u>Permitted Encumbrances</u>:  As defined in <u>Subsection 7.01(n)</u> hereof.

<u>Person</u>:  Any individual, corporation, partnership, joint venture, association, limited liability company, joint-stock company, trust, unincorporated organization, government or any agency or political subdivision thereof, or any other entity.

<u>Principal Due Date</u>:  The day on which the principal of a Mortgage Loan is due, exclusive of any days of grace but taking into account any extensions of the maturity date of any Mortgage Loan.

<u>Purchase Confirmation</u>:  With respect to each Mortgage Loan, a letter entered into between the Seller and the Purchaser in the form of <u>Exhibit 3</u> hereto that confirms the purchase of Mortgage Loan(s) pursuant to the terms of this Agreement and sets forth certain other terms and conditions of the sale and purchase of such Mortgage Loan.

<u>Purchase Price</u>:  The price paid on the related Closing Date by the Purchaser to the Seller pursuant to this Agreement in exchange for the Mortgage Loans, as defined in <u>Subsection 4.01</u> of this Agreement.

<u>Purchase Price Percentage</u>:  With respect to each Mortgage Loan, the purchase price percentage set forth in the related Purchase Confirmation (subject to adjustment as provided therein).

<u>Purchaser</u>:  As defined in the introductory paragraph hereof.

<u>Qualified Appraiser</u>:  A third party appraiser of a Mortgaged Property duly appointed by an independent third party appraiser engaged by the Seller, who (i) had no interest, direct or indirect, in such Mortgaged Property or in any loan made on the security thereof, and (ii) received no benefit from, and whose compensation or flow of business is not affected by the approval or disapproval of the related Mortgage Loan, and (iii) is approved by Purchaser in Purchaser's sole discretion.

<u>Rating Agency</u>:  Each of Fitch, Moody's and S&P or their successors. If such agencies or their successors are no longer in existence, "Rating Agencies" shall be such nationally recognized statistical rating agencies, or other comparable Person, agreed upon and designated by the Purchaser.

<u>Refinanced Mortgage Loan</u>:  A Mortgage Loan the proceeds of which were not used to purchase the related Mortgaged Property.

<u>Rehab/Construction Holdback Amount</u>:  For each Rehab/Construction Holdback Mortgage Loan, the amount, if any, indicated as such on the related Mortgage Loan Schedule as an undisbursed hold back of loan proceeds to be used for rehabilitation or repair of the related Mortgaged Property.

<u>Rehab/Construction Holdback Mortgage Loan</u>:  Each Mortgage Loan for which a Rehab/Construction Holdback Mortgage Loan is indicated on the related Mortgage Loan Schedule for which repair plans to rehabilitate or construct such Mortgaged Property have been submitted by the related Mortgagor to the Seller and have been approved by the Purchaser.

<u>REO Disposition Proceeds</u>:  The proceeds resulting from the sale or other disposition of any REO Property.

REO Documents:  The items pertaining to a particular REO Property and referred to as REO Documents, as set forth on Exhibit A to the Custodial Agreement.

REO Property:  Has the meaning set forth in the Custodial Agreement.

Repurchase Price:  With respect to any Mortgage Loan subject to repurchase, a price equal to the sum of (i) the product of (A) the related Purchase Price plus any Additional Draw Amounts and/or any Rehab/Construction Holdback Amounts disbursed by the Purcahser, as of the date of repurchase, of such Mortgage Loan, times (B) the greater of (1) the related Purchase Price Percentage and (2) one hundred percent (100%), (ii) accrued interest on such Unpaid Principal Balance at the Mortgage Interest Rate from and including the date which interest was last remitted to the Purchaser, through the last day of the month in which such repurchase occurs, (iii) unreimbursed servicing advances, and (iv) all amounts already accrued in respect of which the Purchaser is indemnified by the Seller under Subsection 7.03 in connection with a repurchase of such Mortgage Loan.

Residential Dwelling:  Any one of the following: (i) a detached one-family dwelling, (ii) a detached two-to four-family dwelling, (iii) a one-family dwelling unit in a condominium project, (iv) a multi-family dwelling of no more than 60 units,  (v) a one-family dwelling in a planned unit development, none of which is a mobile or manufactured home, or (vi) a ground up construction project of any Residential Dwelling as defined in (i-v) of this definition or "tear down" and rebuild project of any Residential Dwelling as defined in (i-v) of this definition.

S&P:  Standard & Poor's Ratings Services, a Standard & Poor's Financial Services LLC business or any successor in interest.

Securities Act:  The Securities Act of 1933, as amended.

Seller:  As defined in the introductory paragraph hereof, or the successor in interest to such entity or any successor to the Seller under this Agreement.

Servicer:  As applicable, Churchill Funding I LLC, and any other servicer under any Servicing Agreement and any successor in interest, or any successor servicer appointed under any Servicing Agreement.

Servicing Agreement:  Any servicing agreement entered into from time to time among any mortgage loan servicer and the Purchaser which provides for the servicing of any or all of the Mortgage Loans that are subject to this Agreement, in each case, as such may be amended by the parties thereto from time to time.

Servicing Rights:  With respect to each Mortgage Loan, any and all of the following:  (a) all rights to service the Mortgage Loan; (b) any payments or monies payable or received or receivable for servicing the Mortgage Loans; (c) any late fees, assumption fees, penalties or similar payments with respect to the Mortgage Loans; (d) all agreements or documents creating, defining or evidencing any such servicing rights and all rights of the Seller thereunder; (e) possession and use of any and all credit files pertaining to the Mortgage Loans or pertaining to the past, present or prospective servicing of the Mortgage Loans; (f) all accounts and other rights to payment related

to any of the property described in this paragraph; and (g) all rights, powers and privileges incident to any of the foregoing.

Servicing Transfer Date:  With respect to each Mortgage Loan Pool, the date on which servicing of the related Mortgage Loans shall be transferred from the Seller or the Seller's servicer to the Servicer, which date shall be set forth in the related Purchase Confirmation.

Specified Servicing Practices:  With respect to any Mortgage Loan, those servicing practices which are in accordance with (i) the servicing practices of prudent mortgage lending institutions which service mortgage loans of the same type as such Mortgage Loan in the jurisdiction where the related Mortgage Property is located, (ii) the terms of the Mortgage Loan Documents related to each Mortgage Loan, (iii) Applicable Law, (iv) the responsibilities and obligations with regard to the Mortgage Loan that are set forth in any agreement between the applicable servicer and an insurer, (v) requirements of an insurer with respect to the processing, insuring, or servicing of the Mortgage Loan, and (vi) the same degree of care and skill as servicers would customarily exercise or use under similar circumstances in the conduct of their own affairs, including, but not limited to, making servicing advances for the payment of taxes, amounts due with respect to senior liens, and insurance premiums.

Underwriting Guidelines:  Unless otherwise set forth in this Agreement, the underwriting guidelines set forth in Exhibit 2 hereto.

Unpaid Principal Balance:  With respect to any Mortgage Loan, the Initial Principal Balance plus any advances made by Seller as may be permitted under the Mortgage Loan Documents minus any principal payments received and applied to reduce such principal balance.

**SECTION 2.  PURCHASE AND CONVEYANCE.**

From time to time hereafter, the Purchaser may, upon receipt of copies of all of the applicable Closing Documents specified in Section 9, purchase Mortgage Loans from the Seller for the related Purchase Price, in accordance with and subject to the terms of this Agreement and the related Purchase Confirmation.  Unless otherwise agreed by the Purchaser, all such purchases of Mortgage Loans shall occur no more frequently than weekly (each such date of sale, a "**Closing Date**").  The Seller shall provide at least five (5) Business Days' prior written notice of each Closing Date to the Purchaser.  In connection with each such sale of Mortgage Loans, upon receipt of the related Purchase Price, the Seller shall sell, transfer, assign, set over and convey to the Purchaser, subject to the representations, warranties, terms and provisions of this Agreement, all the right, title and interest of the Seller in and to the related Mortgage Loans, including the related Servicing Rights, as being sold by it, together with the related Mortgage Files and all rights and obligations arising under the documents contained therein.

Mortgage Loan purchases will have a "**Cut-off Date**" as of the applicable date identified in the related Mortgage Loan Schedule and/or Purchase Confirmation, and the transfer of the Servicing Rights associated with the related Mortgage Loans will occur as of such Closing Date, in each case unless otherwise specified in this Agreement.

The Purchaser shall have five (5) Business Days following the date the Seller first presents the Purchaser with such offer to decide whether to purchase such eligible mortgage loan from the Seller.

In addition, with respect to any Additional Draw Unfunded Loan purchased by the Purchaser, the Purchaser agrees to (a) fund the mortgagor directly or (b) fund or reimburse the Seller for any Additional Draw Amounts in accordance with <u>Subsection 4.02(b)</u>.

**SECTION 3.  <u>MORTGAGE LOAN SCHEDULE</u>.**

With respect to each Mortgage Loan to be sold in a Mortgage Loan Pool, the Seller shall deliver the Mortgage Loan Schedule with respect to such Mortgage Loan Pool to the Purchaser at least five (5) Business Days prior to the related Closing Date. The Purchaser shall, prior to the related Closing Date, indicate to the Seller any Mortgage Loans included in the Mortgage Loan Pool which it chooses not to purchase.

**SECTION 4.  <u>PURCHASE PRICE; FUNDING ESCROW; FUNDING OF DRAWS</u>.**

Subsection 4.01.  <u>Purchase Price</u>.

The "**Purchase Price**" for each Mortgage Loan shall be an amount equal (i) the product of (a) the related Purchase Price Percentage, times (b) the Cut-off Date Principal Balance of such Mortgage Loan minus (ii) the product of (y) one (1) minus the related Purchase Price Percentage, times (z) any remaining Additional Draw Amounts for an Additional Draw Unfunded Loan and any remaining Rehab/Construction Holdback Amounts related to a Rehab/Construction Holdback Loan.  Subject to the conditions set forth herein, the Purchaser shall pay the Purchase Price to the Seller on the Closing Date by wire transfer of immediately available funds to the account designated by the Seller. The Purchase Price for each Mortgage Loan shall be reflected in Exhibit A to the related Purchase Confirmation.

In addition to the Purchase Price as described above, the Purchaser shall pay to the Seller, within 10 Business Days of receipt from the underlying Mortgagor, received interest as of the Cut-off Date Principal Balance of each Mortgage Loan as of the related Cut-off Date at the Mortgage Interest Rate from such Cut-off Date through the day prior to the related Closing Date, both inclusive.  For the avoidance of doubt, if Purchaser does not receive interest from the underlying Mortgagor, such aforementioned amount is not payable.

The Purchaser shall own and be entitled to receive with respect to each Mortgage Loan purchased, (i) all scheduled principal due after the related Cut-off Date, (ii) all other recoveries of principal collected after the related Cut-off Date; *provided*, *however*, that all scheduled payments of principal due on or before the related Cut-off Date and collected by the Seller after such Cut-off Date shall belong to the Seller (unless otherwise paid for by the Purchaser as of the Closing Date), (iii) all payments of interest at the Mortgage Interest Rate on the Mortgage Loans (minus that portion of any such interest payment that is allocable to the period prior to the related Cut-off Date), and (iv) all right, title and interest in any related Rehab/Construction Holdback Mortgage Loans as of the related Cut-off Date.

Subsection 4.02.  <u>Funding of Draws</u>.

The Seller shall monitor the progress of the repairs, rehabilitation or reconstruction of the related Mortgaged Property contemplated in the statement of work. With respect to any Additional Draw Unfunded Loan or any Rehab/Construction Holdback Loan, the Seller shall confirm that all applicable conditions set forth in the Mortgage Loan Documents relating to a Mortgage Loan and all applicable requirements set forth in <u>Exhibit 8</u> have been satisfied prior to requesting Purchaser to fund the related Mortgagor any such Additional Draw Amount. The Purchaser shall fund disbursements of Additional Draw Amounts and/or Rehab/Construction Holdback Amounts to the underlying mortgagor (or its designee) within three (3) business days of receipt of an Additional Draw Report or Rehab/Construction Holdback Draw Report. Such amount funded shall be in the Purchaser's discretion after consideration of the Additional Draw Report or Rehab/Construction Holdback Draw Report.

## SECTION 5. <u>EXAMINATION OF MORTGAGE FILES; DUE DILIGENCE</u>.

Prior to the Closing Date, the Purchaser shall be entitled to perform a full due diligence review of the Mortgage Loans and review the Mortgage Loan Documents and the Mortgage File, and the Seller shall, prior to the related Closing Date, make the Mortgage Files and the Mortgage Loan Documents available to the Purchaser or the Diligence Provider, as its designated agent, for examination. The Purchaser or its agent shall have the right to conduct servicing pay history and comment review, property inspections, and obtain appraisal recertifications, drive-by appraisals, or brokers price opinions. Unless otherwise agreed to in writing by the parties to this Agreement, the Seller agrees to cooperate with and consent to and, if required, grant access and/or authorization to, the Purchaser or the Diligence Provider to perform diligence on the related Mortgagors, including, but not limited to, third-party fraud review and such credit reports and other financial information as may be requested by the Purchaser. Such review by the Purchaser or the Diligence Provider shall not impair or diminish the rights of the Purchaser or any of its successors under this Agreement with respect to a breach of the representations and warranties contained in this Agreement. The fact that the Purchaser or the Diligence Provider has conducted or has failed to conduct any partial or complete examination of the Mortgage Files shall not affect the Purchaser's or any of its successors' rights to demand repurchase or other relief or remedy provided for in this Agreement. The fees and expenses of the Diligence Provider for conducting the services described herein shall be borne by the Seller, not the Purchaser. The Seller shall bear the cost of the Appraisal required under this Agreement.

In addition to the documents outlined in Exhibit 5, included with the Mortgage Files, the Seller shall deliver to the Purchaser for inspection:

1.  A project plan/summary for the property, even if the Mortgagor is self-funding construction;

2.  Construction rehab budget;

3.  Current occupancy status;

4.  List of permitting issues, if any are known to Seller, in the case of existing additions;

5.  The Borrower Information listed in <u>Exhibit 7</u>.

**SECTION 6.  DELIVERY OF MORTGAGE LOAN DOCUMENTS.**

Subsection 6.01.  Possession of Mortgage Files.

On the related Closing Date, the ownership of each Mortgage Note, Mortgage and the contents of each Mortgage File is vested in the Purchaser, and the ownership of all records and documents with respect to the related Mortgage Loan prepared by or which come into the possession of the Seller shall immediately vest in the Purchaser, and shall be delivered to the Custodian.

Subsection 6.02.  Books and Records.

All rights arising out of the Mortgage Loans including, but not limited to, all funds received by the Seller after the related Cut-off Date on or in connection with a Mortgage Loan as provided in Section 2 shall be vested in the Purchaser; *provided*, *however*, that all such funds received by the Seller on or in connection with a Mortgage Loan after the related Cut-off Date shall be held by the Seller in trust for the benefit of the Purchaser, as the owner of the Mortgage Loans pursuant to this Agreement.

As more fully set forth in Section 15, it is the express intention of the parties that the transactions contemplated by this Agreement be, and be construed as, a sale of the Mortgage Loans by the Seller and not a pledge of the Mortgage Loans by the Seller to the Purchaser, to secure a debt or other obligation of the Seller.  Consequently, the sale of each Mortgage Loan shall be reflected as a purchase on the Purchaser's business records, tax returns and financial statements, and as a sale of assets on the Seller's business records, tax returns and financial statements.

Subsection 6.03.  Delivery of Mortgage Loan Documents.

The Seller shall, no later than the related Closing Date (or such earlier date as the Purchaser may reasonably request under bailee with the Custodian), deliver and release to the Custodian, the Mortgage File to be held by the Custodian with respect to each Mortgage Loan in accordance with the terms of the Custodial Agreement.  To the extent that any such Mortgage File documents have been delivered for recording and have not yet been returned to the Seller by the applicable recording office, the Seller shall, promptly following receipt by it of such Mortgage File documents from the applicable recording office, deliver such documents to the Custodian; *provided*, *however*, that the original recorded document or a clerk-certified copy thereof shall be delivered to the Custodian no later than one hundred twenty (120) days following the related Closing Date, subject to the following paragraph.

In the event that such original or copy of any document submitted for recordation to the appropriate public recording office is not so delivered to the Custodian within one hundred twenty (120) days following the related Closing Date, and in the event that the Seller does not cure such failure within thirty (30) days after receipt of written notification of such failure from the Custodian, Purchaser, or its designee the related Mortgage Loan shall be repurchased by the Seller at the Repurchase Price.  The foregoing repurchase obligation shall not apply in the event the Seller cannot deliver such original or clerk-certified copy of any document submitted for recordation to the appropriate public recording office within the specified period due to a delay caused by the recording office in the applicable jurisdiction; *provided*, that the Seller shall instead deliver a

recording receipt of such recording office or, if such recording receipt is not available, an officer's certificate of a servicing officer of the Seller, confirming that such document has been accepted for recording and that the Seller shall immediately deliver such document upon receipt; and, *provided*, *further*, that if the Seller cannot deliver such original or clerk-certified copy of any document submitted for recordation to the appropriate public recording office, for any reason, within six (6) months after the related Closing Date, upon receipt of written notification of such failure from the Custodian in an exceptions report delivered pursuant to the terms of the Custodial Agreement, the Seller shall immediately repurchase one or more of such deficient Mortgage Loans, at the related Repurchase Price. To the extent received by it, the Seller shall promptly forward to the Custodian, on behalf of the Purchaser, original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with the terms of the Servicing Agreement. All documents with respect to the Mortgage Loans which may from time to time come into the possession of Seller or Seller's designee following the Closing Date shall be held in trust by Seller or Seller's designee for the benefit of Purchaser as the owner thereof and delivered to Purchaser or its designee promptly upon receipt thereof, and such possession by Seller or Seller's designee is in a custodial capacity only.

## SECTION 7.  REPRESENTATIONS, WARRANTIES AND COVENANTS; REMEDIES FOR BREACH.

Subsection 7.01.  Representations and Warranties Regarding Individual Mortgage Loans.

The Seller hereby represents and warrants to the Purchaser that, as to each Mortgage Loan sold by it, as of the related Closing Date and each Additional Draw Funding Date:

(a)  Origination Practices.  The Seller, or its Affiliate, originated each Mortgage Loan. No Mortgage Loan is subject to the Truth in Lending Act. The Seller and all other parties which have had any interest in the Mortgage Loan on or prior to the related Closing Date, whether as mortgagee, assignee, pledgee or otherwise, are (and, during the period in which they held and disposed of such interest, were) in compliance with any and all applicable "doing business", licensing, or other requirements of the laws of the state wherein the Mortgaged Property is located.

(b)  No Adverse Selection.  The Mortgage Loan was not selected by Seller from its portfolio of mortgage loans of a similar type to such Mortgage Loan using any type of procedures or criteria believed or intended by the Seller to adversely affect the Purchaser's interests or result in the Purchaser's receiving a Mortgage Loan that is of lesser quality than assets pledged to financings or sold to other parties by the Seller or any of its affiliates or which are held in the Seller's or any of its affiliates' respective portfolio.

(c)  Property Valuation.  Unless otherwise agreed to in writing by the Purchaser, each Mortgage Loan contains an Appraisal of the related Mortgaged Property, which was made and signed, prior to the funding of the Mortgage Loan by a Qualified Appraiser. Each Appraisal, (i) was determined and written in accordance with current industry practices, and (ii) satisfies applicable legal and regulatory requirements.  The selection of the appraiser performing the Appraisal was made independently of the broker (where applicable) and the Seller's loan sales and loan production personnel.

(d)     Data.  The information with respect to such Mortgage Loan that is set forth in the related Mortgage Loan Schedule and the information contained in the related Data File delivered to the Purchaser is complete, true and correct in all material respects and accurately reflects the information contained in the Seller's records (including, without limitation, the related Mortgage Files).  In addition, the information contained under each of the headings in the related Mortgage Loan Schedule is complete, true and correct in all material respects.  The Mortgage Loan Schedule contains all required fields.  Except for information specified to be as of the origination date of the Mortgage Loan, the Mortgage Loan Schedule contains the most current information possessed by the Seller.

(e)     No Fraud.  No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to the Mortgage Loan has taken place on the part of the Seller or to the best of the Seller's knowledge, any appraiser, any title company, any closing or settlement agent, any real estate broker or agent, any builder or any developer, any correspondent, any mortgage broker or any other party involved in the solicitation, origination or servicing of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan or in connection with the sale of such Mortgage Loan to the Purchaser. Neither the Seller nor any other party involved in the solicitation, origination or servicing of the Mortgage Loan or in the application for any insurance in relation to such Mortgage Loan has made any representations to the Mortgagor that are inconsistent with the related Mortgage Loan Documents. The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.

(f)     Underwriting Guidelines.  The Mortgage Loan was underwritten in accordance with the applicable Underwriting Guidelines, which Underwriting Guidelines satisfy the standards of prudent mortgage lenders of the same type of mortgage loan as such Mortgage Loan.  Any exceptions permitted by the applicable Underwriting Guidelines have reasonable and documented compensating factors included in the related Mortgage File that also satisfy such standards. Each exception is approved in writing by the Purchaser, as reflected in the related Purchase Confirmation.

(g)     Compliance with Applicable Laws.  Any and all requirements of any applicable federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, fair credit reporting, predatory and abusive lending laws, equal credit opportunity, fair housing and disclosure laws (including, without limitation, any provisions relating to prepayment charges) or unfair and deceptive practices, laws applicable to the solicitation, origination, servicing and collection of the Mortgage Loan by the Seller or its designee (including the collection and servicing practices of any servicer of such Mortgage Loan) have been complied with, the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations and any prepayment charges associated with such Mortgage Loan have been complied with, the related Mortgagor received all disclosure materials required by Applicable Law with respect to the making of such Mortgage Loan and the Seller shall maintain in its possession available for the Purchaser's inspection, and shall deliver to the Purchaser upon demand, evidence of compliance with all such requirements.

Each Mortgage Loan, at the time it was made, complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable predatory and abusive lending laws. The servicing of each Mortgage Loan prior to the related Closing Date complied in all material respects with all then-applicable federal, state and local laws. The servicing and collection practices used by designated servicer of Seller and the entity from which Seller acquired the Loan with respect to each Loan have been in accordance with accepted servicing practices in all respects.

(h)    <u>Ownership; No Prior Liens</u>. Immediately prior to the sale to Purchaser of such Mortgage Loan, the Seller is the sole owner of record and holder of the Mortgage Loan and the indebtedness evidenced by the Mortgage Note. The Mortgage Loan, including the Mortgage Note and the Mortgage, are not assigned or pledged and the Seller has good, indefeasible and marketable title thereto, and the Seller has full right and authority to transfer, sell and assign the Mortgage Loan to the Purchaser free and clear of any encumbrance, participation interest (unless notice of such is given to Purchaser), lien, equity, pledge, claim, charge or security interest and has full right and authority to sell or otherwise transfer the Mortgage Loan. The Seller intends to relinquish all rights to monitor, possess and control the Mortgage Loan. Following the sale of such Mortgage Loan to the Purchaser, the Purchaser will hold such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim (including, but not limited to, any preference or fraudulent transfer claim), or security interest, except to the extent suffered or incurred by the Purchaser.

(i)    <u>Enforceability and Validity of Lien</u>. The related Mortgage is a valid, subsisting, enforceable and perfected first lien and first priority security interest on the related Mortgaged Property, including all improvements, additions, alterations and replacements made at any time with respect to such Mortgaged Property. The lien of the Mortgage is subject only to: (i) the lien of current real property taxes and assessments not yet due and payable; (ii) covenants, conditions and restrictions, rights of way, easements and other matters of the public record as of the date of recording and specifically referred to in the lender's title insurance policy delivered to the originator of such Mortgage Loan and (1) referred to or otherwise considered in the Appraisal made for the originator of such Mortgage Loan and (2) which do not, either individually or in the aggregate, adversely affect the Appraised Value of such Mortgaged Property as set forth in such appraisal; and (iii) other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage or the use, enjoyment, value or marketability of such Mortgaged Property. Any security agreement, chattel mortgage or equivalent document related to and delivered to the Purchaser or its designee with such Mortgage establishes in the Seller a valid and subsisting first lien on the property described therein, and the Seller has full right to sell and assign the same to the Purchaser. Such Mortgage has been recorded or is in the process of being recorded in the appropriate jurisdiction wherein such recordation is required to perfect the lien for the benefit of the Purchaser. The related Mortgaged Property was not, at the time of origination of such Mortgage Loan, subject to a mortgage, deed of trust, deed to secure debt, or other security instrument creating a lien senior to the lien of the Mortgage.

(j)     Mortgage File.  With respect to each Mortgage Loan, the Seller is in possession of a complete Mortgage File for each Mortgage Loan in compliance with the Agreement, except for the original documents which have been delivered to the Custodian (and copies of which have been retained in the related Servicing File) or which have been submitted for recording and not yet returned or other documents noted by the Seller to Purchaser which are not yet received.  The Mortgage Note, the Mortgage, the Assignment of Mortgage and the other Mortgage Loan Documents hereto required to be delivered on or before the related Closing Date have been delivered in compliance with the specific requirements of this Agreement.  Each of the documents and instruments specified to be included therein in the Mortgage File is duly executed and in due and proper form, and each such document or instrument is in form acceptable to the applicable federal or state regulatory agency at the time of origination of the Mortgage Loan.

(k)     No Prior Modification, Satisfaction, Cancellation or Rescission. The terms of the Mortgage Note and Mortgage have not been impaired, waived, altered or modified in any respect, except as provided in a duly executed modification or amendment delivered to Purchaser as part of the related Mortgage File.  The related Mortgagor has not been released, in whole or in part, from the terms of the Mortgage Note and the Mortgage.  The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, release, cancellation, subordination or rescission.  The Seller has not waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause such Mortgage Loan to be in default, nor has the Seller waived any default resulting from any action or inaction by the Mortgagor.

(l)     Satisfaction of All Necessary Payments.  All taxes, governmental assessments, insurance premiums, ground rents, leasehold payments, water, sewer and municipal charges applicable to the related Mortgaged Property, which became due and owing prior to the applicable Closing Date, have either been paid by the Mortgagor or an escrow of funds from the Mortgagor has been established in an amount sufficient to pay for every such item which remains unpaid and which has been assessed but is not yet due and payable, except as disclosed to the Purchaser in the related Data File.

(m)     Property Condition.  Except as disclosed in the related Appraisal or any related construction or property rehabilitation plan disclosed to the Purchaser in writing, the related Mortgaged Property is in good repair and undamaged by waste, fire, earthquake or earth movement, windstorm, hurricane, flood, tornado or other casualty so as to affect adversely the value of the Mortgaged Property as security for such Mortgage Loan or the use for which the premises were intended.   The related Mortgaged Property is in substantially the same condition it was in at the time the most recent Appraised Value was obtained (it being understood that, as disclosed in the related Appraisal or any related construction or property rehabilitation plan disclosed to the Purchaser, such Appraised Value may take into account any rehabilitation of the Mortgaged Property that might not yet have been performed as of the date of this representation).  There is no proceeding pending or, to the best of the Seller's knowledge, threatened for the total or partial condemnation of the related Mortgaged Property.

(n)     No Mechanics' Liens. There are no mechanics', materialmen's or similar liens or claims filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage.

(o)     Compliance with Zoning. The related Mortgaged Property consists of a fee simple estate in real property.  No improvement located on or being part of the Mortgaged Property is in violation of any applicable zoning law or regulation and the Seller has not received any notice of noncompliance with any use or occupancy law, ordinance, regulation, standard, license or certificate with respect to the Mortgaged Property.

(p)     Payments Current.  No payment due on such Mortgage Loan on or prior to the related Closing Date is delinquent by more than thirty (30) days and no payment with respect to such Mortgage Loan has been thirty (30) days or more delinquent since the origination of such Mortgage Loan.  No payment made on such Mortgage Loan has been dishonored. All delinquency figures are calculated and reported using the Mortgage Bankers Association (MBA) methodology.

(q)     Validity of Mortgage Documents.   The related Mortgage Note and Mortgage and related guaranty documents (if any) are genuine, and each is the legal, valid and binding obligation of the maker thereof enforceable in accordance with its terms (including, without limitation, any provisions therein relating to prepayment charges), subject to bankruptcy, reorganization, insolvency, moratorium, other similar laws affecting the enforcement of creditor's rights generally, and other principles of equity affecting the rights of creditors generally, whether considered in a proceeding at law or in equity. All parties to the Mortgage Note and the Mortgage had the legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties.

(r)     Full Disbursement of Proceeds.  Except as set forth on the related Mortgage Loan Schedule, the proceeds of such Mortgage Loan have been fully disbursed to or for the account of the Mortgagor including sums deposited into a trust account to be disbursed pursuant to the Mortgage Loan Documents, except for an amount necessary to complete any on-site or off-site improvement contemplated in connection with the origination of such Mortgage Loan. All costs, fees and expenses incurred in making or closing such Mortgage Loan and the recording of the Mortgage were paid, and the Mortgagor is not entitled to any refund of any amounts paid or due under the Mortgage Note or Mortgage. Any future advances made prior to the related Closing Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term reflected on the Mortgage Loan Schedule.  The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other customary title evidence; and the consolidated principal amount does not exceed the original principal amount of such Mortgage Loan. The related Mortgagor is not entitled to any refund of any amounts paid or due to the related mortgagee pursuant to the related Mortgage Note or Mortgage.

(s)　Title Insurance.　The Mortgage Loan is covered by an ALTA or CLTA lender's title insurance policy or other generally acceptable form of policy or insurance issued by a nationally recognized title insurance company ("Title Insurance Policies") qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to Permitted Encumbrances) the Seller and its successors and assigns as to the first priority lien of the Mortgage at least in the original principal amount of the Mortgage Loan. Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of such lender's title insurance policy. The Seller, its successors and assigns are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is valid and remains in full force and effect and will be in full force and effect upon the consummation of the purchase of the Mortgage Loans as contemplated by this Agreement. The assignment to the Purchaser of the Seller's interest in such lender's title insurance policy does not require any consent of or notification to the title insurer that has not been obtained or made.　No claims have been made under such lender's title insurance policy, and no prior holder of the Mortgage, including the Seller, has done, by act or omission, anything that would impair the coverage of such lender's title insurance policy. In connection with the issuance of such lender's title insurance policy, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other Person, and no such unlawful items have been received, retained or realized by the Seller, its affiliates or assigns. Additionally, such lender's title insurance policy insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. Such mortgagee title insurance policy is in full force and effect.

(t)　Hazard and Flood Insurance.　All buildings on the related Mortgaged Property (and any fixtures, equipment or other personal property, if financed by such Mortgage Loan) are insured by a Qualified Insurer against loss by fire and such hazards as are covered under a standard extended coverage endorsement and such other hazards as are customary in the area where the related Mortgaged Property is located pursuant to insurance policies conforming to the Seller's standard business practices and this Agreement, in an amount which is not less than the lesser of (i) 100% of the insurable value of the Mortgaged Property, and (ii) the outstanding principal balance of the Mortgage Loan, but in no event less than the minimum amount necessary to fully compensate for any damage or loss on a replacement cost basis.　If the Mortgaged Property is a condominium or townhome unit or a unit in a planned unit development, it is included under the coverage afforded by a blanket or other policy in an amount which is not less than the lesser of 100% of the insurable value of such unit and the outstanding principal balance of the Mortgage Loan, but in no event less than the minimum amount necessary to fully compensate for any damage or loss on a replacement cost basis (including coverage for the replacement of any improvements or betterments to such condominium unit or unit in a planned unit development).　If the improvements on the Mortgaged Property are in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards, then a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect with a Qualified Insurer. Such flood insurance policy is in an amount representing coverage not less than the least of (A) the outstanding principal balance of the Mortgage Loan, (B) the full insurable value of the related Mortgaged Property and (C) the maximum amount of insurance which was

available under the Flood Disaster Protection Act of 1973, as amended, and the Biggert-Waters Flood Insurance Reform Act of 2012. If the Mortgaged Property is a condominium or a unit in a planned unit development, it is included under the flood coverage afforded by a blanket or other policy. All individual insurance policies contain a standard mortgagee clause naming the Seller and its successors and assigns as mortgagee, and all premiums thereon have been paid. The related Mortgage obligates the Mortgagor thereunder to maintain a hazard insurance policy at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to obtain and maintain such insurance at such Mortgagor's cost and expense, and to seek reimbursement therefor from the Mortgagor. Each such insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement. No such insurance policy may be reduced, terminated or canceled without thirty (30) days' prior written notice to the mortgagee and no such notice has been received by any Person. All premiums due and owing on such insurance policies have been paid. In connection with the placement of any such insurance, no commission, fee, kickback or other compensation has been or will be received by the Seller or any designee of the Seller or any corporation in which the Seller or any officer, director, or employee had a financial interest at the time of placement of such insurance.

(u) <u>No Default</u>. There is no default, breach, violation of the terms of the related Mortgage or Mortgage Note or event of acceleration existing under the terms of such Mortgage or Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute such a default, breach, violation or event of acceleration, and neither the Seller nor its predecessors have waived any such default, breach, violation or event of acceleration. No foreclosure action is currently being threatened or has begun with respect to such Mortgage Loan.

(v) <u>No Defenses</u>. No Mortgage Note or Mortgage is subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto.

(w) <u>Customary Provisions</u>. The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust by trustee's sale, and (ii) otherwise by judicial foreclosure. There is no homestead or other exemption (other than under the Servicemembers Civil Relief Act or similar state or local laws) available to the Mortgagor or any other person, or restriction on the Seller or any other person, including, without limitation, any federal, state or local, law, ordinance, decree, regulation, guidance, attorney general action, or other pronouncement, whether temporary or permanent in nature, that would interfere with, restrict or delay, either (y) the ability of the Seller, the Purchaser or any servicer or any successor servicer

to sell the related Mortgaged Property at a trustee's sale or otherwise, or (z) the ability of the Seller, the Purchaser or any servicer or any successor servicer to foreclose on the related Mortgage. Upon default by a Mortgagor on such Mortgage Loan and foreclosure on, or trustee's sale of, the Mortgaged Property pursuant to the proper procedures, the holder of such Mortgage Loan will be able to deliver good and marketable title to the Mortgaged Property.

(x)　　No Bankruptcy.　Neither the related Mortgagor nor any guarantor of such Mortgage Loan is in bankruptcy or is insolvent.　Neither the Mortgagor nor any guarantor of such Mortgage Loan was the subject of a bankruptcy proceeding that was dismissed or discharged in the two (2) years prior to the origination of such Mortgage Loan.　Neither the Mortgagor nor any guarantor of such Mortgage Loan has previously owned a property with respect to which a foreclosure sale was completed in the two (2) years prior to the origination of such Mortgage Loan.

(y)　　Location and Type of Mortgaged Property.　The related Mortgaged Property is located in the state set forth in the related Mortgage Loan Schedule and consists of a one or more parcels of real property with a detached one-family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit in a condominium project, or an individual unit in a planned unit development or a *de minimis* planned unit development or a townhouse (including a row house joined by common walls with another property).　The Mortgaged Property is not a log home, mobile home, manufactured home, geodesic dome or other unique property type.

(z)　　Doing Business.　All parties that had any interest in such Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) (1) in compliance with any and all applicable licensing requirements of the laws of the state wherein the related Mortgaged Property is located and (2) either (A) organized under the laws of such state or (B) qualified to do business in such state.

(aa)　　No Violation of Environmental Laws.　At the time of origination, the related Mortgaged Property was in material compliance with all then-applicable environmental laws pertaining to environmental hazards including, without limitation, asbestos.　To the best of the Seller's knowledge, the Mortgaged Property is free from any and all toxic or hazardous substances, hazardous wastes or solid wastes, as such terms are defined in the Comprehensive Environmental Response Compensation and Liability Act, the Resource Conservation and Recovery Act of 1976, or other federal, state or local environmental legislation including, without limitation, asbestos and mold, and there exists no violation of any local, state or federal environmental law, rule or regulation.　To the best of the Seller's knowledge, there is no pending action or proceeding directly involving such Mortgaged Property in which compliance with any environmental law, rule or regulation is an issue; and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of the Mortgaged Property.

(bb)     <u>Insurance Requirements</u>.  With respect to any insurance policy including, but not limited to, hazard, title, or mortgage insurance, covering a Mortgage Loan and/or the related Mortgaged Property (A) such policy (i) is a valid, binding and enforceable obligation of the Qualified Insurer and is in full force and effect and will inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement, and (ii) contains a standard mortgagee clause naming the Seller, its successors, and its assigns as mortgagee or the Seller's assignor of such Mortgage Loan as mortgagee, (B) none of the Mortgagor, the originator nor any prior holder has engaged in any act or omission which would impair the coverage of any such policy, the benefits of the endorsement, or the validity and binding effect of either, including without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the originator, (C) all premiums due thereunder have been paid, and (D) all provisions are being complied with and no action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any such policy, irrespective of the cause of such failure of coverage.  Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required insurance. No action, inaction or event has occurred, and no state of facts exists or has existed, that has resulted or will result in the exclusion from, denial of or defense to coverage under any hazard insurance policy, other insurance policy or bankruptcy bond in connection with such Mortgage Loan, irrespective of the cause of such failure of coverage.

(cc)     <u>Deeds of Trust</u>.  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Mortgagee to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(dd)     <u>Recordation of Mortgage</u>.  The original Mortgage with respect to such Mortgage Loan is recorded or has been submitted for recordation in the jurisdiction in which the related Mortgaged Property is located.  The Assignment of such Mortgage, upon the insertion of the name of the assignee and recording information, is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the related Mortgaged Property is located.

(ee)     <u>Acceleration of Payments</u>.  The related Mortgage contains an enforceable provision, to the extent not prohibited by Applicable Law as of the date of such Mortgage, for the acceleration of the payment of the outstanding principal balance of the Mortgage Loan in the event that the Mortgaged Property is sold or transferred without the prior written consent of the mortgagee thereunder.

(ff)     <u>Predatory Lending</u>.  The Mortgage Loan is not (a) subject to the provisions of the Homeownership and Equity Protection Act of 1994 as amended ("<u>HOEPA</u>"), (b) a "high cost" mortgage loan, "covered" mortgage loan or "predatory" mortgage loan under

any state, local or federal law, as defined by applicable predatory and abusive lending laws; or (c) secured by a lien on the related Mortgagor's principal residence.

(gg)  _Servicing and Collection Practices_.  The origination, servicing and collection practices used with respect to such Mortgage Loan have been in accordance with accepted servicing practices, any Applicable Laws, rules and regulations and in accordance with the terms of the Mortgage Note, Mortgage and other loan documents, whether such origination and servicing was done by the Seller, its affiliates, or any third party which originated such Mortgage Loan on behalf of, or sold such Mortgage Loan to, any of them, or any servicing agent of any of the foregoing.  With respect to escrow deposits and Escrow Payments in connection with such Mortgage Loan, all such payments are in the possession of the Seller and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.  All such Escrow Payments have been collected in full compliance with state and federal law.  No escrow deposits or Escrow Payments or other charges or payments have been capitalized under the related Mortgage Note.

(hh)  _Servicemembers' Civil Relief Act_.  The Mortgagor has not notified the Seller, and the Seller has no knowledge of any relief requested or allowed to the Mortgagor under the Servicemembers' Civil Relief Act, or other similar state or local statutes.

(ii)  _No Ground Lease_.  Unless otherwise noted in the related Mortgage Loan Schedule, the related Mortgaged Property not is subject to a ground lease.

(jj)  _No Facsimile Endorsements_.  No endorsements (including allonges) to the related Mortgage Note and no signatures on any Assignment of Mortgage are evidenced by facsimile, Portable Document Format (.pdf) or other electronic means; the execution of such Mortgage Note and each Assignment of Mortgage was effected only by the signing party affixing its original signature thereto.

(kk)  _Sole Collateral_.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property and the security interest of any applicable security agreement or chattel mortgage, and such collateral does not serve as security for any other obligation.

(ll)  _Interest Calculation_.  Interest on such Mortgage Loan is calculated on the basis of a three hundred sixty (360)-day year consisting of twelve (12) thirty (30)-day months.

(mm)  _Payment Terms_. The principal of such Mortgage Loan is payable in full on the earlier of (i) the maturity date of such Mortgage Loan and (ii) the date on which the indebtedness thereunder becomes immediately due and payable thereunder.  Interest on the Mortgage Note is payable on the first day of each month, with interest calculated and payable in arrears.  The Due Date of the first payment under the Mortgage Note is no more than sixty (60) days from the date of the Mortgage Note. No Mortgage Note permits negative amortization. No Mortgage Loan has a shared appreciation or other contingent interest feature or any "buydown" provision currently in effect.

(nn)     Occupancy of Mortgaged Property – No Occupancy by Mortgagor. As of the date of origination and since the time the Mortgage Loan was originated, and in accordance with the terms of the Mortgage Note, the Mortgaged Property is either vacant and the Mortgagor has presented a plan to cure any defects or was lawfully occupied under applicable law by a person unrelated to the Mortgagor pursuant to a lease or other contract negotiated at arm's length terms. The Mortgage Loan Documents prohibit (i) the Mortgagor, (ii) any guarantor of the Mortgagor, (iii) any Person holding an equity or other ownership interest in the Mortgagor or any guarantor of the Mortgagor and (iv) any member of the immediate family of the Persons identified in clauses (i), (ii) and (iii) from occupying or inhabiting any part of the Mortgaged Property or any Residential Dwelling located thereon, and the Seller has not waived any such prohibition to permit such occupancy or habitation by any such Person or Persons.

(oo)     Type of Loan.  (i) The Mortgage Loan is primarily for business or commercial purposes and not primarily for personal, family or household purposes and (ii) the Mortgaged Property securing the related Mortgage is non-owner occupied.

(pp)     Source of Loan Payments. To the best of the Seller's knowledge, no payments due and payable under the terms of the Mortgage Note and Mortgage or deed of trust, except for seller or builder concessions, have been paid by any person who was involved in, or benefited from, the sale or purchase of the Mortgaged Property or the origination, refinancing, sale, purchase or servicing of the Mortgage Loan other than the Mortgagor.

(qq)     Mortgage Loans as Described.  The information set forth in each Mortgage Loan Schedule and the electronic tape delivered by the Seller to the Purchaser with respect to the Mortgage Loan is true, correct and complete. With respect to each Mortgage Loan, there are no servicing expenses or advances reimbursable by the Seller other than those expenses and advances identified in the applicable Mortgage Loan Schedule.

(rr)     Credit Scores.     The credit score used in applying the applicable Underwriting Guidelines was the Credit Score, as defined herein.

(ss)     Regarding the Mortgagor.  Each Mortgagor is either a limited liability company, limited partnership, corporation or other form of business entity formed in one of the fifty states, or has been personally guaranteed by the Mortgagor if Mortgagor is not "warm body" person.  No Mortgagor or the guarantor thereof was at the time the Mortgage Loan was originated, or has been since the time the Mortgage Loan was originated, a debtor in any state or federal bankruptcy or insolvency proceeding.  No Mortgagor or the guarantor thereof, has had a prior bankruptcy in the five years, and neither has previously owned a property in the last three years that was the subject of a foreclosure or which title to the real property was conveyed to the originator or a deed in lieu of foreclosure during the time the Mortgagor or guarantor was the owner of record.

(tt)     No Outstanding Charges.  There are no defaults by the Seller in complying with the terms of the Mortgage. To the best of Seller's knowledge, all taxes, ground rents, governmental assessments, insurance premiums, leasehold payments, and water, sewer and

municipal charges which previously became due and owing with respect to each Mortgaged Property have been paid, or escrow funds have been established, to the extent permitted by law, in an amount sufficient to pay for every such escrowed item which remains unpaid and which has been assessed but is not yet due and payable. The Seller has not advanced funds, or induced, solicited or knowingly received any advance from any party other than the Mortgagor, directly or indirectly, for the payment of any amount due under the Mortgage Loan.

(uu)  <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>.  To the best of the Seller's knowledge, there is no proceeding pending or threatened for the total or partial condemnation of the Mortgaged Property and such property is in reasonably good repair and the Mortgagor has presented a plan to cure any defects and is undamaged by waste, water, fire, earthquake or earth movement, windstorm, flood, tornado or other casualty, so as to affect adversely the value of the Mortgaged Property as security for the Mortgage Loan or the use for which the premises were intended. To the best of the Seller's knowledge, each Mortgaged Property is at least in substantially the same condition as it was at the time the most recent Appraised Value was obtained.

(vv)  <u>Location of Improvements; No Encroachments</u>.  The Mortgaged Property consists of a fee simple estate in real property. All improvements subject to the Mortgage which were considered in determining the Appraised Value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within the project with respect to a condominium unit).  No improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in <u>Subsection 7.01(x)</u> below.  The Mortgaged Property and all improvements on the Mortgaged Property comply with all applicable zoning and subdivision laws and ordinances. The Seller has not received notice from the Mortgagor, any governmental authority, or any other person of any noncompliance with any use or occupancy law, ordinance, regulation, standard, license, or certificate with respect to the Mortgaged Property.

(ww)  <u>Due on Sale</u>.  The Mortgage contains an enforceable provision for the acceleration of the payment of the Maximum Loan Balance of the Mortgage Loan in the event that the Mortgaged Property are sold or transferred without the prior written consent of the Mortgagee thereunder.

(xx)  <u>Transfer of Mortgage Loans</u>. The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located. Each original Mortgage was recorded and all subsequent assignments of the original Mortgage (other than the assignment to the Purchaser) have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof as against creditors of the Seller, or is in the process of being recorded.

(yy)  <u>Consolidation of Future Advances</u>. Any future advances made by the Seller prior to the related Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears

a single interest rate and single repayment term. The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first-lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence. The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

(zz) <u>Unacceptable Investment</u>. The Seller has no knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or materially adversely affect the value or the marketability of the Mortgage Loan.

(aaa) <u>Escrow Payments</u>. With respect to escrow deposits and payments that the Seller or its servicer is entitled to collect, all such payments are in the possession of, or under the control of the Seller or its servicer and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made. All escrow payments have been collected in full compliance with state and federal law and the provisions of the related Mortgage Note and Mortgage. As to any Mortgage Loan that is the subject of an escrow, escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every escrowed item that remains unpaid and has been assessed but is not yet due and payable. No escrow deposits or other charges or payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note.

(bbb) <u>Anti-Money Laundering Laws</u>. The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001 (collectively, the "**Anti-Money Laundering Laws**").

(ccc) <u>Interest Rate Adjustments</u>. Any interest required to be paid pursuant to applicable state and local law has been properly paid and credited.

(ddd) <u>Tax Identification/Back Up Withholding</u>. All tax identifications for individual Mortgagors have been certified as required by law. The Seller has complied with all IRS requirements regarding the obtainment and solicitation of taxpayer identification numbers and the taxpayer identification numbers provided to the Purchaser as reflected on the Mortgage Loan Schedule are correct.

(eee) <u>No Litigation</u>. There is no litigation, proceeding, governmental investigation or class action lawsuit existing or pending or to the knowledge of the Seller threatened, or any order, injunction, decree or settlement agreement outstanding, relating to or arising out of the Mortgage Loan, nor does the Seller know of any basis for any such litigation, proceeding, governmental investigation or class action lawsuit.

(fff) <u>Licensing Requirements</u>. All parties that have had any interest in such Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) in compliance with any and

all applicable licensing requirements of the laws of the state wherein the related Mortgaged Property is located, except to the extent that failure to be so licensed would not give rise to any claim against the trust or otherwise adversely affect the enforceability of the Mortgage Loan.

(ggg) <u>Access; Utilities; Separate Tax Lots</u>.  Each Mortgaged Property (a) is located on or adjacent to a public road and has direct legal access to such road, or has access via an irrevocable easement or irrevocable right of way permitting ingress and egress to/from a public road, (b) is served by or has uninhibited access rights to public or private water and sewer (or well and septic) and electricity all of which are appropriate for the current use of such Mortgaged Property, and (c) constitutes one or more separate tax parcels which do not include any property which is not part of such Mortgaged Property or is subject to an endorsement under the related title policy insuring such Mortgaged Property, or in certain cases, an application has been, or will be, made to the applicable governing authority for creation of separate tax lots, in which case the related Mortgage Loan requires the related Mortgagor to escrow an amount sufficient to pay taxes for the existing tax parcel of which such Mortgaged Property is a part until the separate tax lots are created.

(hhh) <u>Licenses and Permits</u>.  Each Mortgagor covenants in the loan documents that it shall keep all material licenses, permits and applicable governmental authorizations necessary for its operation of each related Mortgaged Property in full force and effect, and all such material licenses, permits and applicable governmental authorizations are in effect. The Seller is not aware of any Mortgagor, guarantor or other obligor on any Mortgage Loan having received notice of any noncompliance with any use or occupancy law, ordinance, regulation, standard, license or certificate with respect to any Mortgaged Property.

(iii) <u>No Contingent Interest or Equity Participation</u>.  No Mortgage Loan has a shared appreciation feature or a negative amortization feature or an equity participation by the Seller.

(jjj) <u>Additional Draw Unfunded Loans</u>.  With respect to each Additional Draw Unfunded Loan and Rehab/Construction Holdback Loan, (i) the related Mortgagor may request advances up to the amount of the Maximum Loan Balance as set forth in the related Mortgage Loan Documents and (ii) any Additional Draw Amount has or will be disbursed in accordance with the terms of the related Mortgage Loan Documents and Applicable Law.

Subsection 7.02.  <u>Seller Representations</u>.

The Seller hereby represents and warrants to the Purchaser that, as to itself as of the date hereof, each Closing Date and each Additional Draw Funding Date:

(a) <u>Due Organization and Authority</u>.  It is a corporation or limited liability company duly organized, validly existing, and in good standing under the laws of the jurisdiction of incorporation or organization and has all licenses necessary to carry on its business as now being conducted and is licensed, qualified and in good standing in each

state or jurisdiction where a Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by it, and in any event the Seller is in compliance with the laws of any such state or jurisdiction to the extent necessary to ensure the enforceability of the terms of this Agreement. It has full corporate power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by it and the consummation of the transactions contemplated hereby have been duly and validly authorized. This Agreement evidences the legal, valid, binding and enforceable obligation of it, and all requisite corporate action has been taken by it to make this Agreement valid and binding upon it in accordance with the terms of this Agreement.

(b) <u>No Consent Required</u>. No consent, approval, authorization, or order of any court or governmental agency or body, or federal or state regulatory authority having jurisdiction over it, is required for the execution, delivery and performance by the Seller of or compliance by the Seller with this Agreement, or, if required, such consent, approval, authorization or order has been or will, prior to the related Closing Date, be obtained.

(c) <u>No Conflicts</u>. Neither the execution and delivery of this Agreement, the performance of the servicing responsibilities by the Seller or the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions, or provisions of the Seller's charter or by-laws or any legal restriction or any agreement or instrument to which the Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any law, rule, regulation, order, judgment, or decree to which the Seller or its property is subject, or impair the ability of the Seller to perform its obligations under this Agreement, or impair the value of the Mortgage Loans sold by it.

(d) <u>Ordinary Course of Business</u>. Its transfer, assignment and conveyance of the Mortgage Notes and the Mortgages pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction, and the consummation of the transactions contemplated by this Agreement are in the ordinary course of business of the Seller.

(e) <u>No Pending Adverse Actions; Compliance with Laws</u>. There is no action, suit, proceeding, or investigation commenced or, to the best of the Seller's knowledge, pending or threatened, by any governmental agency or other regulatory or administrative body having jurisdiction over the Seller or review by any Rating Agency pending or threatened against the Seller which, either in any one instance or in the aggregate, may result in any material adverse change in the business, operations, financial condition, properties, or assets of the Seller, or in any material impairment of the right or ability of the Seller to carry on its business substantially as now conducted, or in any material liability on the part of the Seller, or which would draw into question the validity of this Agreement or of any action taken or to be taken in connection with the obligations of the Seller contemplated herein, or which would be likely to impair materially the ability of the Seller to perform under the terms of this Agreement. The Seller has complied with, and is not in

default under, any law, ordinance, requirement, regulation, rule, or order applicable to its business or properties, the violation of which would materially and adversely affect the operations or financial condition of the Seller or its ability to perform its obligations under this Agreement.

(f)  <u>Ability to Perform</u>.  It does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement.  It is solvent and the sale of the Mortgage Loans will not cause it to become insolvent.  The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of its creditors.

(g)  <u>No Default</u>.  The Seller is not in default, and no event or condition exists that after the giving of notice or lapse of time or both, would constitute an event of default under any material mortgage, indenture, contract, agreement, judgment, or other undertaking, to which the Seller is a party or which purports to be binding upon it or upon any of its assets, which default would impair materially the ability of the Seller to perform under the terms of this Agreement.  All representations, warranties and covenants of the Seller contained in any material mortgage, indenture, contract, agreement, judgment, or other undertaking, are true and correct.

(h)  <u>Sale Treatment</u>.  It has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for accounting and tax purposes.

(i)  <u>No Brokers' Fees</u>.  It has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans other than those previously identified in writing.

(j)  <u>Fair Consideration</u>.  The consideration received by it upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

(k)  <u>No Untrue Information</u>.  Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of fact or omits to state a fact necessary to make the statements contained therein not misleading.

(l)  <u>Compliance with Insurance Contracts</u>.  The Seller has complied with all material obligations applicable to it under all applicable insurance contracts, including hazard and flood insurance policies.  The Seller has not taken any action or failed to take any action that might cause the cancellation of or otherwise affect any of the insurance contracts.

(m)  <u>Approvals</u>.  The Seller is not in receivership, conservatorship or bankruptcy, nor are any of its subsidiaries or affiliates.  The Seller is not operating pursuant to any restrictive operating agreement or order mandated by any federal or state regulatory body. The capitalization plan of the Seller has been approved by all applicable regulatory

agencies. The approval of any federal or state regulatory body having jurisdiction over the Seller is not necessary for the Seller's execution and consummation of this Agreement or, if necessary, timely approval, reasonably acceptable to the Purchaser, shall be obtained by the Seller, at its expense but with the assistance of the Purchaser, and written evidence of same shall be provided to the Purchaser by the Seller.

(n)     No Material Change.  There has been no material adverse change in the business, operations, financial condition, or assets of the Seller since the date of the Seller's most recent financial statements.

(o)     Insolvency.  It is not insolvent and has not (i) admitted in writing its inability to pay its debts generally as they become due, (ii) filed a petition to take advantage of any applicable insolvency or reorganization statute, (iii) made an assignment for the benefit of its creditors or (iv) voluntarily suspended payment of any of its obligations.

(p)     Audits.  It has not, as of the date hereof and the related Closing Date, been the subject of allegations of material failure to comply with applicable loan claims procedures, in its most recent audits (if any) nor have any such audits (if any) resulted in a request for repurchase of Mortgage Loans or indemnification in connection with the Mortgage Loans, other than as has been disclosed to the Purchaser.  Such disclosure shall not affect any rights or remedies which the Purchaser may have against it as a result of a repurchase demand or any indemnity or other remedy of the Purchaser hereunder.

Subsection 7.03.  Remedies for Breach of Representations, Warranties and Covenants.

It is understood and agreed that the representations and warranties set forth in Subsections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser and its respective successors and assigns, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage or the examination or lack of examination of any Mortgage File.

Upon discovery by the Seller or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser therein (or which materially and adversely affects the interest of the Purchaser in or the value of the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the other.

With respect to those representations and warranties which are made to the Seller's knowledge, if it is discovered by the Seller or the Purchaser that the substance of such representation and warranty is inaccurate and such inaccuracy materially and adversely affects the value of the related Mortgage Loans or the interest of the Purchaser (or which materially and adversely affects the value of a Mortgage Loan or the interests of the Purchaser in the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), notwithstanding the Seller's lack of knowledge with respect to the substance of such representation and warranty, such inaccuracy shall be deemed a breach of the applicable representation and warranty.

Within five (5) days of the earlier of either discovery by or notice to the Seller of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest of the Purchaser therein, the Seller shall use commercially reasonable efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall repurchase such Mortgage Loan or Mortgage Loans at the Repurchase Price.

Any repurchase of a Mortgage Loan pursuant to the foregoing provisions of this Subsection 7.03 shall occur not later than the date which is thirty (30) Business Days after the expiration of any applicable cure period, or discovery or notice, as applicable, of the condition resulting in the related repurchase obligation, and shall be accomplished by the Seller remitting by wire transfer to the Purchaser the amount of the Repurchase Price. Notwithstanding any provision of this Agreement, the Purchaser's assignment or sale of any Mortgage Loan to a third party shall not extinguish the Purchaser's right to seek recourse pursuant to this Subsection 7.03.

Upon repurchase of any deficient Mortgage Loan, the Purchaser and the Seller shall arrange for the assignment of the repurchased Mortgage Loan to the Seller or its designee, free of any security interests, liens or other encumbrances in favor of Persons claiming by or through the Purchaser and the delivery to the Seller of any documents held by the Purchaser or any custodian relating to the repurchased Mortgage Loan in the manner required by this Agreement with respect to the purchase and sale of such Mortgage Loan on the related Closing Date. In the event a deficient Mortgage Loan is repurchased, the Seller shall, simultaneously with its remittance to the Purchaser of such Repurchase Price, give written notice to the Purchaser that such repurchase has taken place, which notice shall also identify the Repurchase Price and the Mortgage Loans that are the subject of such repurchase. Upon such repurchase, the Mortgage Loan Schedule shall simultaneously be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement and the Servicing Agreement.

Subsection 7.04. Interim Servicing; Servicing Transfer.

(a) The Mortgage Loans shall be purchased by the Purchaser and sold by the Seller on a servicing-released basis. With respect to each Mortgage Loan, the Seller agrees to act as interim servicer on behalf of the Purchaser for the related Interim Servicing Period.

During the related Interim Servicing Period, the Seller, without additional compensation from the Purchaser, shall perform the normal and customary servicing activities in respect of Mortgage Loans in accordance with this Agreement and Specified Servicing Practices; *provided, however*, the Seller shall not, without the prior written consent of the Purchaser or unless required under applicable law or regulations (i) modify a Mortgage Loan (including, without limitation, a release of any collateral or any party from liability on or with respect to such Mortgage Loan), (ii) forgive principal in respect of any Mortgage Loan, (iii) accept a deed in lieu of foreclosure with respect to any Mortgage Loan, (iv) conduct any short sale in respect of any mortgaged property, (v) settle or compromise any condemnation or insurance claim or proceeding, (vi) settle or compromise, or make any offers to settle or compromise, any existing litigation or other proceedings in respect of any of the Mortgage Loans to the extent such action would result in the reduction of proceeds on the related Mortgage Loan or (vii) take any other action

that would materially impair any interest of the Purchaser in the Mortgage Loans or any interest therein.

The Seller shall collect on behalf of the Purchaser any payments received from the Mortgagors during the Interim Servicing Period and shall hold such payments in a segregated bank account insured by the Federal Deposit Insurance Corporation. Any reasonable, necessary and documented corporate and servicing advances with respect to the Mortgage Loans made by the Seller after the related Cut-off Date shall be the responsibility of the Purchaser. Within two (2) Business Days following the related Servicing Transfer Date, the Seller shall remit to the Servicer, as designee of the Purchaser, all collections received during the Interim Servicing Period in respect of the Mortgage Loans, net of any unreimbursed corporate and servicing advances made after the related Cut-off Date. The Seller shall not make any corporate or servicing advance with respect to a Mortgage Loan that exceeds ten thousand Dollars ($10,000.00) without the prior written consent of the Purchaser.

(b)     On or prior to the related Servicing Transfer Date, the Seller shall cooperate with the Purchaser and the Servicer and take any and all necessary actions to effect the transfer of servicing of the related Mortgage Loans to the Servicer and shall comply with any servicing transfer instructions provided by the Purchaser or the Servicer. The Seller shall comply with all applicable law related to the transferor of servicing of the Mortgage Loans to the Servicer, including delivery any required notices of transfer to the related Mortgagors.

Subsection 7.05.  <u>Covenants of Seller</u>.

(a)     <u>Reporting</u>.  The Seller hereby covenants and agrees with the Purchaser to deliver to the Purchaser or its designee:

(1)     promptly after becoming aware thereof, notice of (1) the commencement of, or any determination in, any legal, judicial or regulatory proceedings with respect to the Seller or any Mortgage Loan, (2) any regulatory proceeding or dispute between the Seller or its parent company and any governmental or regulatory body, (3) any event or condition, which, if adversely determined, would have a material adverse effect on (A) the validity or enforceability of this Agreement, (B) the financial condition or business operations of the Seller, or (C) the ability of the Seller to fulfill its obligations under this Agreement, or (4) any material adverse change in the business, operations, prospects or financial condition of the Seller, including, without limitation, the insolvency of the Seller or its parent company;

(2)     contact names and information on individuals performing relevant servicing functions, and any updates thereto, if so requested by Purchaser; and

(3)     from time to time, as applicable, any updates to the incumbency certificate delivered to the Purchaser on the date hereof, as requested by the Purchaser.

(b)     Further Assurances.  The Seller shall, upon request of the Purchaser, promptly execute and deliver to the Purchaser all such other and further documents and instruments of transfer, conveyance and assignment, and shall take such other action the Purchaser may reasonably require to more effectively transfer, convey, assign to and vest in the Purchaser and to put the Purchaser in possession of the property to be transferred, conveyed, assigned and delivered hereunder and otherwise to carry out more effectively the intent of the provisions under this Agreement.  Further, the Seller shall, upon the reasonable request of the Purchaser, provide information and documentation relevant to the Seller and its origination and sale practices and procedures and with respect to servicing, including, but not limited to, description of the Seller's servicing facilities, experience, size and composition and delinquency information of servicing portfolio, general servicing processes and procedures (including handling delinquencies, losses, charge-offs, loss mitigation and foreclosure and work-out) and such other information related to the Seller or any subservicer's performance or its performance hereunder.

(c)     Notice of Significant Events.  So long as the terms of this Agreement remain in effect the Seller will promptly notify the Purchaser of the occurrence of any of the following:

(1)     any change in the Seller's business address and/or telephone number;

(2)     any change in the Seller's name;

(3)     entry of any court judgment or regulatory order in which the Seller is or may be required to pay a claim or claims which, in the Seller's opinion, could have a material adverse effect on the Seller's financial condition;

(4)     lawsuits or litigations or similar matters against the Seller which allege a material violation of any law, regulation, order, or contract relating to its mortgage operation or the Seller admits to committing, or is found to have committed, a material violation of any law, regulation, or order relating to its mortgage operation;

(5)     the initiation of any investigations of the Seller by any state or federal agency which could have a material effect on the Seller's ability to perform its obligations under this Agreement, it being agreed that any routine regulatory exam; or

(6)     any material change in the form of Mortgage Loan Documents that the Seller uses to originate Mortgage Loans.

Subsection 7.06.  Early Payment Default.

(a)     Early Payment Default.  With respect to any Mortgage Loan, if the related Mortgagor is delinquent (as determined using the MBA methodology) in making the first or second Monthly Payments due to the Purchaser after the date the Mortgage Loan was sold to the Purchaser, the Seller shall promptly (and in any event within five (5) days of

receipt of notice from the Purchaser), repurchase such Mortgage Loan from the Purchaser at the related Repurchase Price.

(b)     Notwithstanding any provision of this Agreement, the Purchaser's assignment or sale of any Mortgage Loan to a third party shall not extinguish the Purchaser's right to seek repurchase pursuant to this Subsection 7.06; provided, that the affected Mortgage Loan is sold, and title to the affected Mortgage Loan is transferred, to the Seller in accordance with this Agreement.

## SECTION 8.  CLOSING.

Each closing for the purchase and sale of the Mortgage Loans shall take place on the related Closing Date.  The closing shall be by telephone, confirmed by letter or wire as the parties shall agree.  The closing shall be subject to each of the following conditions:

(a)     all of the representations and warranties of the Seller in this Agreement shall be true and correct as of the related Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a breach or default under this Agreement;

(b)     the Purchaser shall have received copies of all applicable Closing Documents as specified in Section 9, in such forms as are agreed upon and acceptable to the Purchaser, duly executed by all signatories as required pursuant to the terms hereof; and

(c)     all other terms and conditions of this Agreement required to be complied with or performed shall have been complied with or performed.

## SECTION 9.  CLOSING DOCUMENTS.

(a)     On the date hereof, the Seller shall deliver to the Purchaser fully executed originals of the following documents (including, if applicable, all related exhibits, attachments and annexes thereto):

(i)     an Officer's Certificate of the Seller, in the form of Exhibit 1 hereto; and

(ii)     an incumbency certificate identifying the name and title, and evidencing the related signature, of each officer of the Seller authorized to execute each of the foregoing agreements or certificates, and any documentation to be executed from time to time in connection herewith or therewith.

(b)     On each Closing Date, the Seller shall deliver to the Purchaser (and, where applicable, the Custodian), Closing Documents consisting of fully executed originals of each of the following documents:

(i)     in accordance with the terms of Section 3, the related Mortgage Loan Schedule;

(ii)     a security release certification executed by each applicable secured party (or formerly secured party) if any of the Mortgage Loans have at any time been subject to a security interest, pledge or hypothecation for the benefit of such person and, if applicable, a certificate of the Seller;

(iii)     an Officer's Certificate of the Seller stating that (x) the pool of Mortgage Loans to be sold to the Purchaser on such Closing Date satisfies each of the stipulations in the Loan Stipulations (other than with respect to any stipulation expressly relating to a measurement date other than such Closing Date) and (y) all of the representations and warranties of the Seller in this Agreement shall be true and correct as of the related Closing Date and no event shall have occurred which, with notice or the passage of time, would constitute a breach or default under this Agreement; and

(iv)     the related Purchase Confirmation.

## SECTION 10.  COSTS.

The Seller shall pay any commissions due its salesmen and the legal fees and expenses of its attorneys.  The Seller shall pay the cost of delivering the Mortgage Files to the Purchaser or its designee, the cost of recording the Assignments of Mortgage and any custodial fees payable to the Seller's custodian incurred in connection with the release of any of the Mortgage Loan Documents as may be required hereunder.

## SECTION 11.  FINANCING FACILITY COOPERATION.

Seller acknowledges that it is the intention of Purchaser to enter into one or more credit agreements, loan agreements, master repurchase agreements, indentures, term securitizations or other financing facilities (directly or indirectly) to finance purchases of Eligible Loans (each such financing facility, the "Financing Facility"). In connection with any Financing Facility, Seller shall:

(a)     cooperate with respect to all reasonable requests and reasonable due diligence procedures, including, without limitation, participating in meetings with potential lenders;

(b)     deliver to Purchaser or to any person designated by Purchaser (including, without limitation, for inclusion in any prospectus or other offering material) (i) such information regarding Seller, loan delinquency, collection experience and such other information regarding the Mortgage Loans as is customarily provided to lenders, purchasers or investors in the applicable Financing Facility or as is reasonably requested by Purchaser or its Financing Facility counterparties, (ii) such statements and audit letters of reputable certified public accountants pertaining to information provided by Seller and such opinions of counsel (including 10b-5 opinions) as are, in each case, customarily delivered by originators and servicers and reasonably determined by Purchaser or any other person to be necessary in connection with the applicable Financing Facility and (iii) such other information or documents as may be necessary for the purposes of compliance with securities laws and other laws applicable to such Financing Facility,

(c)     deliver a reconstitution agreement with respect to (i) the representations and warranties previously provided as of the applicable Purchase Date relating to the Purchased Loans to be included in the Financing Facility; and (ii) such other representations and warranties as may reasonably be required by Purchaser's Financing Facility counterparties;

(d)     indemnify the applicable parties to the Financing Facility for material misstatements or omissions contained in or with respect to information and documents delivered under clause (b); and

(e)     enter into such amendments to this Agreement as may be reasonably requested by the Purchaser's Financing Facility Counterparties.

## SECTION 12.  __NOTICES__.

All demands, notices and communications hereunder shall be in writing (which, in the case of the Purchaser may be provided by email transmission) and shall be deemed to have been duly given if mailed, by registered or certified mail, return receipt requested, or, if by other means, when received by the other party at the address as follows:

(i)     if to the Purchaser:

Churchill Funding I LLC
101 West Worthington, Suite 210
Charlotte, NC 28203
Attention:  Derrick Land
Email:  dl@churchillhld.com

(ii)     if to the Seller:

Easy Financial LLC
6125 Washington Blvd, Suite 300
Culver City, CA 90232
Attention: Ben Donel
Email: Ben@sunsetequitygroup.com

or, in each case, at such other address as may hereafter be furnished to the other party by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

## SECTION 13.  __SEVERABILITY CLAUSE__.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or

unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.

## SECTION 14.  <u>NO PARTNERSHIP</u>.

Nothing herein contained shall be deemed or construed to create a co-partnership or joint venture between the parties hereto.

## SECTION 15.  <u>GOVERNING LAW; VENUE; WAIVER OF JURY TRIAL</u>.

THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NORTH CAROLINA AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS WITHOUT GIVING EFFECT TO CONFLICT OF LAWS PRINCIPLES THEREOF.

EACH PARTY HERETO HEREBY EXPRESSLY AND IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURTS OF THE STATE OF NORTH CAROLINA FOR PURPOSES OF ALL LEGAL PROCEEDINGS ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES PERFORMED HEREUNDER. EACH PARTY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF THE VENUE OF ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT AND ANY CLAIM THAT ANY SUCH PROCEEDING BROUGHT IN SUCH A COURT HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. EACH PARTY HERETO HEREBY CONSENTS TO PROCESS BEING SERVED IN ANY SUIT, ACTION OR PROCEEDING WITH RESPECT TO THIS AGREEMENT, OR ANY DOCUMENT DELIVERED PURSUANT HERETO BY THE MAILING OF A COPY THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, RETURN RECEIPT REQUESTED, TO ITS RESPECTIVE ADDRESS SPECIFIED AT THE TIME FOR NOTICES UNDER THIS AGREEMENT.

EACH PARTY HERETO HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY, WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

**SECTION 16.  <u>INTENTION OF THE PARTIES</u>.**

It is the intention of the parties that the Purchaser is purchasing, and the Seller is selling, the Mortgage Loans and not a debt instrument of the Seller or another security.  Accordingly, the parties hereto each intend to treat the transaction for federal income tax purposes as a sale by the Seller, and a purchase by the Purchaser, of the Mortgage Loans.  The Purchaser shall have the right to review the Mortgage Loans and the related Mortgage Files to determine the characteristics of the Mortgage Loans which shall affect the federal income tax consequences of owning the Mortgage Loans and the Seller shall cooperate with all reasonable requests made by the Purchaser in the course of such review.

It is not the intention of the parties that such conveyances be deemed a pledge thereof.  However, in the event that, notwithstanding the intent of the parties, such assets are held to be the property of the Seller or if for any other reason this Agreement is held or deemed to create a security interest in either such assets, then (a) this Agreement shall be deemed to be a security agreement within the meaning of the Uniform Commercial Code of the State of North Carolina and (b) the conveyances provided for in this Agreement shall be deemed to be an assignment and a grant by the Seller to the Purchaser of a security interest in all of the assets transferred, whether now owned or hereafter acquired.

**SECTION 17.  <u>WAIVERS</u>.**

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced.

**SECTION 18.  <u>EXHIBITS</u>.**

The exhibits to this Agreement are hereby incorporated and made a part hereof and are an integral part of this Agreement.

**SECTION 19.  <u>GENERAL INTERPRETIVE PRINCIPLES</u>.**

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)  the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)  accounting terms not otherwise defined herein or therein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)  references herein and therein to "Articles," "Sections," "Subsections," "Paragraphs" and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement, as applicable;

(d)     reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)     the words "herein," "hereof," "hereunder" and other words of similar import contained herein refer to this Agreement as a whole and not to any particular provision; and

(f)     the term "include" or "including" shall mean without limitation by reason of enumeration.

## SECTION 20.  **REPRODUCTION OF DOCUMENTS**.

This Agreement and all documents relating thereto, including, without limitation (a) consents, waivers and modifications which may hereafter be executed, (b) documents received by any party at the closing and (c) financial statements, certificates and other information previously or hereafter furnished, may be reproduced by any photographic, photostatic, microfilm, micro-card, miniature photographic or other similar process.  The parties hereto agree that any such reproduction shall be admissible in evidence as the original itself in any judicial or administrative proceeding, whether or not the original is in existence and whether or not such reproduction was made by a party hereto in the regular course of business, and that any enlargement, facsimile or further reproduction of such reproduction shall likewise be admissible in evidence.

## SECTION 21.  **AMENDMENT**.

This Agreement may be amended from time to time by the Purchaser and the Seller by written agreement signed by the parties hereto.

## SECTION 22.  **CONFIDENTIALITY**.

Each of the Purchaser and the Seller shall employ proper procedures and standards designed to maintain the confidential nature of the terms of this Agreement, except to the extent (a) the disclosure of which is reasonably believed by such party to be required in connection with regulatory requirements or other legal requirements relating to its affairs; (b) disclosed to any one or more of such party's employees, officers, directors, agents, attorneys or accountants who would have access to the contents of this Agreement and such data and information in the normal course of the performance of such Person's duties for such party, to the extent such party has procedures in effect to inform such Person of the confidential nature thereof; (c) that is disclosed in a prospectus, prospectus supplement or private placement memorandum relating to a securitization of the Mortgage Loans by the Purchaser (or an affiliate assignee thereof) or to any Rating Agency or other Person in connection with the resale or proposed resale of all or a portion of the Mortgage Loans by such party in accordance with the terms of this Agreement; and (d) that is reasonably believed by such party to be necessary for the enforcement of such party's rights under this Agreement.

**SECTION 23.  ENTIRE AGREEMENT.**

This Agreement constitutes the entire agreement and understanding relating to the subject matter hereof between the parties hereto and any prior oral or written agreements between them shall be deemed to have merged herewith.

**SECTION 24.  FURTHER AGREEMENTS.**

The Seller shall, upon reasonable request of the Purchaser, promptly execute and deliver to the Purchaser all such other and further documents and instruments of transfer, conveyance and assignment, and shall take such other action the Purchaser may reasonably require to more effectively transfer, convey, assign to and vest in the Purchaser and to put the Purchaser in possession of the property to be transferred, conveyed, assigned and delivered hereunder and otherwise to carry out more effectively the intent of the provisions under this Agreement.  Further, the Seller shall, upon reasonable request of the Purchaser, provide information and documentation relevant to the Seller and its purchase and sale practices and procedures.  The Seller and the Purchaser each agree to execute and deliver to the other any other such reasonable and appropriate additional documents, instruments or agreements as may be necessary or appropriate to effectuate the purposes of this Agreement.

**SECTION 25.  SUCCESSORS AND ASSIGNS.**

This Agreement shall bind and inure to the benefit of and be enforceable by the Purchaser and the Seller, and the respective successors and assigns of the Purchaser and the Seller. The Seller may not resign, transfer, sell or assign its rights or interests in this Agreement without the written consent of the Purchaser.  The initial Purchaser and any subsequent purchasers may assign this Agreement to any Person to whom any Mortgage Loan is transferred pursuant to a sale or financing.  Upon any such assignment, the Person to whom such assignment is made shall succeed to all rights and obligations of the Purchaser under this Agreement to the extent of the related Mortgage Loan or Mortgage Loans.

*[Signatures follow]*

IN WITNESS WHEREOF the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

**PURCHASER:**

**CHURCHILL FUNDING I LLC**

By: _____

Name: _____

Title: _____


**SELLER:**

**<u>Easy Financial LLC</u>**

By: _____

Name: _____

Title: _____

# EXHIBIT 1

## FORM OF SELLER'S OFFICER'S CERTIFICATE

I, [_____], hereby certify that I am a duly elected [_____] of [        ] (the "**Seller**"), a [  ] [corporation] [limited liability company], and further certify, on behalf of the Seller as follows:

1.      Attached hereto as Attachment I are a true and correct copy of the Articles of Organization [and Limited Liability Company Agreement] of the Seller as are in full force and effect on the date hereof.  No event has occurred which has affected the good standing of the Seller under the laws of the State of [  ].

2.      No proceedings looking toward liquidation, dissolution or bankruptcy of the Seller or a merger pursuant to which the Seller would not be the surviving entity are pending or contemplated.

3.      Each person who, as an officer or attorney-in-fact of the Seller, signed (a) the Master Mortgage Loan Purchase Agreement (the "**Agreement**"), dated [__], by and between the Seller and [PURCHASER NAME ], as the Purchaser, and (b) any other document delivered prior hereto or on the date hereof in connection with the sale of the Mortgage Loans in accordance with the terms of the Agreement was, at the respective times of such signing and delivery, and is, as of the date hereof, duly elected or appointed, qualified and acting as such officer or attorney-in-fact, and the signatures of such persons appearing on such documents are their genuine signatures.

4.      All of the representations and warranties of the Seller contained in Subsections 7.01 and 7.02 of the Agreement are true and correct in all material respects as of the date hereof and shall be true and correct in all material respects as of each applicable Closing Date.

5.      The Seller has performed all of its duties and has satisfied all the material conditions on its part to be performed or satisfied prior to the date hereof and each Closing Date pursuant to the Agreement.

All capitalized terms used herein and not otherwise defined shall have the meaning assigned to them in the Purchase Agreement.

Exhibit 1-1

IN WITNESS WHEREOF, I have hereunto signed my name on this ___ day of
_____.

_____,
as Seller

By: _____

Name: _____

Title: _____


I, _____, a _____ of _____, hereby certify that
_____ is a duly elected, qualified and acting _____ of the Seller
and that the signature appearing above is such person's genuine signature.

IN WITNESS WHEREOF, I have hereunto signed my name on this ____ day of
_____.

By: _____

Name: _____

Title: _____

Exhibit 1-2

<u>**EXHIBIT 2**</u>

**BUSINESS PURPOSE LOANS UNDERWRITING GUIDELINES**

<u>Minimum Transaction Experience</u>: For Rehab/Construction Holdback Mortgage Loans, borrower must have completed two purchases and resales;

<u>Minimum Cash Reserves</u>: Mortgagor has supplied bank statements, not older than 45 days before loan closing showing reserves of at least 3 months of interest payments on subject loan.

<u>Borrower Types Allowed</u>: Limited liability companies, corporations, general partnerships, limited partnerships, statutory law trusts, or "warm body" persons on a case-by-case and with personal guarantee.

<u>Credit Score</u>: Principal(s) of borrower must have a credit score of above 620.

<u>Derogatory Incidents</u>: Principal of borrower must not have within the time periods noted herein had:

                            Bankruptcies (within past 5 years)
                            Foreclosures (within past 3 years)
                            Short Sales (within past 3 years)
                            Deeds in Lieu (within past 3 years)

Exhibit 2-1

# EXHIBIT 3

## FORM OF PURCHASE CONFIRMATION

This Purchase Confirmation, dated as of [___] (the "**Closing Date**"), is by and between [__] (the "**Seller**") and [                    ] (the "**Purchaser**"), pursuant to that certain Master Mortgage Loan Purchase Agreement, dated as of [___] (the "**Agreement**"). The Seller does hereby sell, transfer, assign, set over and convey to the Purchaser, without recourse and on a servicing-released basis, and subject to the terms of this Purchase Confirmation and the Agreement, all right, title and interest of the Seller in and to the Mortgage Loans, including the related Servicing Rights, listed on the Mortgage Loan Schedule attached hereto as <u>Exhibit A</u>, together with the related Mortgage Files and all rights and obligations arising under the documents contained therein.

1. <u>Defined Terms</u>.  Except as otherwise set forth below, capitalized terms used herein but not otherwise defined shall have the respective meanings ascribed to such terms in the Agreement.

 (a) The aggregate Purchase Price associated with this Mortgage Loan Pool is $[ ].

 (b) The aggregate Rehab/Construction Holdback Mortgage Loan associated with this Mortgage Loan Pool as indicated in the Mortgage Loan Schedule is $[ ].

 (c) The aggregate Additional Draw Amount associated with this Mortgage Loan Pool as indicated in the Mortgage Loan Schedule is $[ ].

 (d) The Cut-off Date for this Mortgage Loan Pool is [ ].

 (e) The Closing Date for this Mortgage Loan Pool is [ ].

 (f) The Servicing Transfer Date for this Mortgage Loan Pool is [ ].

2. <u>Loan Stipulations/Additional Conditions/Terms</u>: [_____]

3. <u>Permitted Exceptions</u>: [_____]

The Seller hereby acknowledges and agrees that on the Closing Date, the Purchaser shall remit or cause to be remitted to an account designated by the Seller, an amount equal to the Purchase Price.

Exhibit 3-1

IN WITNESS WHEREOF, the parties have executed this Purchase Confirmation by their duly authorized officers as of the Closing Date.

CHURCHILL FUNDING I LLC

By: _____

Name: _____

Title: _____


[                              ]

By: _____

Name: _____

Title: _____

Exhibit 3-2

# EXHIBIT 4

## MORTGAGE LOAN SCHEDULE FIELDS

| |
|---|
| Loan ID |
| Loan Status |
| Originator |
| Address |
| City |
| State |
| Zip |
| Purpose |
| Project Type |
| TERM |
| Gross Rate |
| Originator Points |
| Originator Spread |
| Purchaser Rate |
| Seller Rate |
| Origination Date |
| Maturity Date |
| Property Acquisition Cost |
| Total Loan Amount |
| Initial Draw Amount |
| Construction Holdback Amount |
| Current Unpaid Principal Balance |
| As is Appraisal |
| After Repaired Value |
| As-is Value LTV |
| After-rehab LTV |
| Loan to Cost |
| Borrower Fico |
| Borrower Type |

Exhibit 4-1

# EXHIBIT 5

## MORTGAGE FILE

*(Documents to be delivered to Custodian)*

With respect to each Mortgage Loan:

      (a)    the original Promissory Note bearing all intervening endorsements, endorsed "pay to the order of, without recourse" and signed in the name of the last endorsee;

      (b)    the original of any guarantee or power of attorney in connection with the Mortgage Note (if any);

      (c)    the original Deed of Trust/Mortgage with evidence of recording thereon or a copy thereof certified by the related recording office;

      (d)    the originals of any assumption, modification, consolidation or extension agreements, with evidence of recording thereon, which evidence is obvious to the Custodian based on its good faith evaluation and would be obvious to a reasonable person, or copies thereof certified by the Seller to be a true, correct and complete copies of the original of what it purports to be;

      (e)    the original Assignment of Mortgage conveying the related Mortgage to the Lender with evidence of recording thereon or a copy thereof certified by the related recording office;

      (f)    the originals of all intervening assignments of mortgage with evidence of recording thereon or copies certified by the related recording office;

      (g)    the original or copy of mortgagee final title insurance policy; and

      (h)    mortgagor affidavit certifying the business purpose of the loan

Exhibit 5-1

## EXHIBIT 6

## MORTGAGE LOAN DOCUMENTS

1. Appraisal

2. Credit Report on Guarantor(s) if guaranteed

3. Bank Statements on Guarantor(s) if guaranteed

4. Borrower Entity Documents, if applicable

5. Loan Agreement (if any)

6. Promissory Note

7. Security Instrument(s)

8. Hold Back Agreement, if applicable

9. Improvement Budget, if applicable

10. Guaranty(s) (if guaranteed)

11. Closing Statement

12. Title Policy or commitment if no Policy received yet

13. Power of Attorney (if applicable)

Exhibit 7-1

## EXHIBIT 7

## BORROWER INFORMATION

FICO

Background check

Track Record

Credit Report

Bank Statement

Organization Documents

Exhibit 7-2

# EXHIBIT 8

## ADDITIONAL DRAW FUNDING REQUIREMENTS

With respect to each Additional Draw Amount:

(a)     request forms received from the Mortgagor;

(b)     forms or documents used by the Seller to process the Additional Draw Amount, including but not limited to worksheets and signed authorizations;

(c)     a copy of the third party inspection used to verify the completion of work in accordance with all Applicable Law, including all supporting pictures;

(d)     lien waivers as applicable; and

(e)     a reconciliation of the current Unpaid Principal Balance.

Exhibit 8-1